## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO
## WESTERN DIVISION

**DANIELLE JETER,**                                        CASE NO. 3:22 CV 1187

Plaintiff,

v.                                                        JUDGE JAMES R. KNEPP II

**SPINNAKER INSURANCE CO.,**

Defendant.                                        **MEMORANDUM OPINION AND ORDER**


### INTRODUCTION

Currently pending before the Court are Plaintiff Danielle Jeter's Motion for Partial Summary Judgment (Doc. 12) and Defendant Spinnaker Insurance Company's Motion for Summary Judgment. (Doc. 21). Both are fully briefed and ripe for decision.[1]

For the reasons discussed below, the Court denies Plaintiff's Motion and grants in part and denies in part Defendant's Motion.

### BACKGROUND

This case arises out of an insurance claim to Defendant by Plaintiff based on a June 6, 2021, fire at Plaintiff's residence at 341 Kenilworth Avenue in Toledo, Ohio (hereinafter "the property").

Plaintiff purchased the property for $2,300 at a 2016 sheriff's auction or foreclosure sale and resided there with Jewett Richardson, her significant other, and her daughter at the time of

---

1. The Court offers two initial observations regarding the briefing. First, somewhat confusingly, in Plaintiff's opposition to Defendant's later-filed Motion for Summary Judgment, Plaintiff asserts that she "moved for partial summary judgment which was denied." (Doc. 23). However, that motion remains pending. Second, Defendant did not file a reply brief relative to its motion, and the time in which to do so has expired. *See* Local Rule 7.1(e).

the fire. (Plaintiff Depo., at 7, 13, 15-16).[2] During the year before the fire, Plaintiff listed the property for sale; she did not recall receiving any offers to buy the property and at some point took it off the market. *Id.* at 14-15. It was not on the market in June 2021. *Id.* at 15.

Plaintiff first insured the house in March 2021; she insured the dwelling for $320,000. *Id.* at 15; *see also* Doc. 2-1, at 6-83 (insurance policy effective March 20, 2021, to March 20, 2022); (Plaintiff Examination Under Oath ("EUO"), at 130)[3]. Plaintiff obtained the policy through Hippo Insurance Services; the policy was with Defendant. *See* Doc. 2-1, at 6. Hippo also processed Plaintiff's later insurance claim.

A few days prior to the fire, Plaintiff and Richardson traveled (by car) to St. Louis, Missouri for Richardson to have dental work. (Plaintiff EUO, at 90-91); (Plaintiff Depo., at 15-17) (testifying that they traveled six hours away, but Plaintiff could not recall where they went). Richardson ultimately did not have any dental work done because the work could not be done in one day as Plaintiff and Richardson anticipated. (Plaintiff Depo., at 17); (Plaintiff EUO, at 92-93).

When Plaintiff and Richardson returned, they did not go to the property, but stayed in a hotel in Bowling Green or Maumee. *See* Plaintiff Depo., at 18 (stating they stayed in a hotel in "Bowling Green, I think"); Plaintiff EUO, at 93-94 (stating they stayed at a hotel in Maumee, possibly the Best Western).[4] Plaintiff testified she did not return to the property upon her return to the area because "[Richardson's] family was beefing and they [were] still there so [she] didn't want to take him home". (Plaintiff Depo., at 17); *see also* Plaintiff EUO, at 140-41 ("Because his

---

2. Plaintiff's Deposition is located at ECF Doc. 17.
3. Plaintiff's EUO is located at ECF Doc. 16.
4. Fillmore interviewed Plaintiff as part of his investigation. (Doc. 14-1, at 12). She "initially advised that they were out of town in St. Louis, MO at the time of the fire incident. She later amended her statement to say that they came back prior to the fire on the date of the loss and were staying in a hotel in Maumee, OH." *Id.*

family was still calling . . . And I didn't want to go to the house and his family come over to the house, because they knew where we lived at."). Plaintiff and Richardson were in that hotel the night the fire occurred. (Plaintiff Depo., at 18).

At her deposition, Plaintiff testified she was the only person with a key to the house. *Id.* at 19.[5] Plaintiff's house had an alarm; it did not go off before the fire. (Plaintiff EUO, at 129).

There is no dispute that the cause of the fire was deemed to be arson. *See* Plaintiff Aff., Doc. 12-1, at ¶ 6 ("The fire marshal[] or otherwise fire expert employed by the local government determined the cause of the fire to be an arson."); Fillmore Aff., Doc. 14-1, at 10-13 (report stating the "fire originated within the vapors of an ignitable liquid that was distributed throughout the rear porch, the dining room, and the living room" and concluding the cause of the fire "was incendiary", and "was the result of human intervention via an open flame or the initiation of flames coming into contact with ignitable liquids vapors.").[6] Plaintiff avers that she "was not, in any way, involved in the alleged arson" and that she has "no idea what caused the fire, and . . . was not aware that the fire was going to occur on June 6, 2021." (Plaintiff Aff., Doc. 12-1, at ¶¶ 6-7).

---

5. While Plaintiff and Richardson were gone, and on the night of the fire, Plaintiff's daughter who lived with her was staying elsewhere. (Plaintiff Depo., at 18). Plaintiff's testimony on this point during her Examination Under Oath is unclear as to whether Plaintiff's daughter had a key:

> Q:    All right. Who had a key to your house?
> A:    Nobody.
> Q:    Did your daughter have a key to your house . . . ?
> A:    Yes.
> Q:    Was she with you in St. Louis?
> A:    No, she was at my other daughter's house.
> Q:    Where – but [your daughter] didn't have a key, then, correct?
> A:    No.

(Plaintiff EUO, at 67-68).

6. Paul Fillmore of NEFCO Fire Investigations was hired by Hippo Insurance to conduct an investigation of the fire. (Doc. 14-1, at 10).

3

Following the fire, Plaintiff submitted a timely claim to Defendant. (Plaintiff Aff., Doc. 12-1, at ¶¶ 13). In conjunction, Plaintiff hired a public adjusting company, Associated Adjusters to help with her property loss claim. (Plaintiff EUO, at 120-21); (Plaintiff Depo., at 21). After a discussion with Plaintiff, Associated Adjusters created a list of personal property damaged in the fire, and asked Plaintiff to identify the age of the property for valuation purposes. *See* Plaintiff Depo., at 22-26). Associated Adjusters sent Plaintiff a letter requesting this information:

> Enclosed please find the preliminary personal property report. At this time, we are pricing the total loss items.
>
> To complete my report, I will need the following from you though:
>
> 1) The approximate ages of all the items claimed. If you cannot remember the exact age, you can use a range. For example, two to four years, four to seven years, etc. It is very important to be as accurate as possible on this as the insurance company will sometimes evaluate the ages of the items to determine if it is reasonable that an Insured could make these purchases in the timeline provided based on their income.

(Doc. 17, at 39). Attached to this letter was a property inventory. *See id.* at 40-137. Plaintiff completed the inventory, indicating the age of each item; she indicated virtually every item listed was between one and four years old. *Id.* at 138-87. Associated Adjusters then prepared a valuation report indicating the replacement cost of Plaintiff's personal property was $125,212.51. *Id.* at 188-379.[7] In conjunction, Plaintiff signed a Sworn Statement in Proof of Loss. *Id.* at 379; (Plaintiff Depo., at 29).[8] Associated Adjusters provided this to Hippo on August 21, 2021. (Doc. 17, at 188). Its letter noted the "[t]he estimate is to be considered a basic claim submitted for the purpose of conference and is subject to revision due to subsequent information, depreciation, and error and omission, if applicable." *Id.*

---

7. $125,212.51 was the "Replacement Value"; the "Actual Cost Value Damages" was $107,643.43. (Doc. 17, at 189).

8. Plaintiff testified she did not remember the Sworn Statement, but did recognize her signature thereon. (Plaintiff Depo., at 29-30).

4

In February 2022, Hippo conducted an examination under oath of Plaintiff. Defendant highlights the following purported discrepancies between Plaintiff's sworn proof of loss and her EUO testimony. First, in the proof of loss, Plaintiff stated she had purchased two China cabinets within the past one to two years, and that each was worth $1799.88. (Doc. 17, at 194). But during her EUO, Plaintiff testified she had purchased the cabinets at a secondhand store for $100-$200 for both cabinets. (Plaintiff EUO, at 112-13); (Plaintiff Depo., at 27). Second, Plaintiff's inventory listed a one- to three-year-old refrigerator worth $949.99 (Doc. 17, at 190), but in her EUO, she indicated she purchased all of her appliances in 2016 (making them six to seven years old) (Plaintiff EUO, at 73-74). Third, Plaintiff's inventory listed a headboard and footboard from the back bedroom as worth $899.00 (Doc. 17, at 196); but in her EUO she testified she had acquired the headboard, footboard, and a full-sized dresser for $299.00 (Plaintiff EUO, at 114-15). Fourth, Plaintiff's inventory listed a washer and dryer at a value of $1509.96 (Doc. 17, at 191), but during her EUO stated that her dryer did not work and she was waiting for someone to pick up and dispose of it (Plaintiff EUO, at 109-10). Fifth and finally, Plaintiff's inventory listed over twenty items in the "back area next to kitchen" or "back area" that were damaged in the fire (Doc. 17, at 206-07), but during her EUO, stated that the "[o]nly thing, [she] had on the back porch, honestly, was a screen door" (Plaintiff EUO, at 76).

Finally, during her EUO, Plaintiff was asked about her income and how she could have acquired over $125,000 worth of property over four years, despite a limited income. *See* Plaintiff EUO, at 121-29. At the time of the fire, both Plaintiff and Richardson were unemployed. (Plaintiff EUO, at 17-18, 29). Plaintiff had last worked in 2020 or 2021. (Plaintiff Depo., at 6-7); (Plaintiff EUO, at 86-87). She received Social Security disability payments. (Plaintiff EUO, at

18-23).[9] Plaintiff confirmed her gross income in 2018 was $6,480. *Id.* at 125. She estimated her income in 2019, 2020, and 2021 was about the same. *Id.*

At the time of the fire, Plaintiff owed overdue property taxes on the house; she was paying $50 per month on a payment plan. (Plaintiff Depo., at 19-20); (Plaintiff EUO, at 132-33) (testimony Plaintiff owed "4000-and-some dollars" and had last paid property taxes in 2019). She testified that the furnace at the house did not work in spring 2021. *Id.* at 53.

Richardson owed Plaintiff over $10,000 in back child support (for her children who were now 22 and 29) at the time of the EUO. (Plaintiff EUO, at 29).

Relevant Policy Provisions

The policy at issue was in effect from March 20, 2021, to March 20, 2022. (Doc. 2-1, at 8). Plaintiff timely paid her insurance premiums between the time she obtained the insurance and the fire. (Plaintiff Aff., Doc. 12-1, at ¶ 3). The Declaration Page of the policy shows the following coverages and liability limits:

| **POLICY COVERAGE**: | **LIMIT OF LIABILITY** |
|---|---|
| (Section I – Property): | |
| Coverage A – Dwelling (your home) | $320,000 |
| Coverage B – Other structures | $64,000 |
| Coverage C – Personal property | $160,000 |
| Coverage D – Loss of use | $96,000 |
| | |
| (Section II – Liability) | |
| Coverage E – Personal liability | $200,000 (each occurrence) |
| Coverage F – Medical payment to others | $1,000 (each person) |

*Id.*

The insurance policy further contained the following exclusions and conditions (among others):

---

9. During the EUO, Plaintiff referred to a "pension" from Chrysler, but in an errata sheet, corrected that she received checks from Social Security, not from Chrysler. (Doc. 16, at 162). She also added that she received $10,000 in unemployment benefits in 2020. *Id.*

**SECTION I – EXCLUSIONS**

\* \* \*

**A.** We do not insure, under any coverage, for any loss which would not have occurred in the absence of one or more of the following excluded events.

\* \* \*

**8. Intentional Loss**

Intentional Loss means any loss arising out of any act an "insured" commits or conspires to commit with the intent to cause a loss.

\* \* \*

**SECTION I – CONDITIONS**

\* \* \*

**R. Concealment or Fraud**

**1.** With respect to a loss caused by fire, we do not provide coverage to the "insured" who has:
> **a.** Intentionally concealed or misrepresented any material fact or circumstance;
> **b.** Engaged in fraudulent conduct; or
> **c.** Made false statements;
> relating to this insurance.

*Id.* at 53, 56, 60.

On March 30, 2022, Defendant denied Plaintiff's insurance claim. (Doc. 17-1, at 378-79). It cited the "Concealment or Fraud" condition quoted above, and further stated the "denial is not exclusive of any other policy provisions, exclusions, and/or defenses which may be available to Hippo with regard to this claim, and Hippo expressly reserves the right to enforce and/or assert any and all policy provisions, exclusions and defenses." *Id.*

**STANDARD OF REVIEW**

Summary judgment is appropriate where there is "no genuine issue as to any material fact" and "the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). When considering a motion for summary judgment, the Court must draw all inferences from the record in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith*

7

*Radio Corp.*, 475 U.S. 574, 587 (1986). The Court is not permitted to weigh the evidence or determine the truth of any matter in dispute; rather, the Court determines only whether the case contains sufficient evidence from which a jury could reasonably find for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). The moving party bears the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).

This burden "may be discharged by 'showing' – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case." *Id.* The nonmoving party must go beyond the pleadings and "present affirmative evidence in order to defeat a properly supported motion for summary judgment." *Anderson*, 477 U.S. at 257. Further, the nonmoving party has an affirmative duty to direct the Court's attention to those specific portions of the record upon which it seeks to rely to create a genuine issue of material fact. *See* Fed R. Civ. P. 56(c)(3) (noting the court "need consider only the cited materials").

DISCUSSION

Plaintiff brings two claims based on Defendant's denial of her insurance claim: (1) breach of contract; and (2) bad faith. Plaintiff seeks partial summary judgment, limited to a determination that she is entitled to coverage of the structure of the house itself. Defendant seeks summary judgment on all claims – those related to both the dwelling and personal property. For the following reasons, the Court denies Plaintiff's motion, grants Defendant's motion as to the bad faith claim, and denies Defendant's motion as to the breach of contract claim.

Breach of Contract

In her motion for partial summary judgment, Plaintiff contends she is entitled to summary judgment as it pertains to coverage of the dwelling itself because the contract is severable and Defendant only cited alleged misrepresentations related to the personal property, not the

dwelling itself. Defendant's response is two-fold. First, Defendant contends that the policy is not severable and Plaintiff's misrepresentations as to her personal property void coverage in its entirety (and thus instead, Defendant is entitled to summary judgment on both claims). Second, Defendant contends that it can establish an arson defense and this defeats Plaintiff's breach of contract claim.

*Severability / Divisibility*

In her briefing, Plaintiff argues the dwelling coverage and personal property coverage sections of the insurance policy are "severable" and therefore any alleged misrepresentations with respect to personal property are not a basis on which to deny coverage for the dwelling itself. She therefore seeks summary judgment in her favor on her claim for the dwelling. Defendant responds that the policy is not severable.

In support of her argument that the personal property and dwelling coverage sections of the policy are severable, Plaintiff relies on *Polk v. Cleveland R. Co.*, 20 Ohio App. 317 (1925). *Polk*, involving a collective bargaining contract and an arbitration clause, stated the following regarding severable or divisible contracts:

> If the contract is to be adjudged a severable contract rather than an entire one, it is because, by a judicial interpretation thereof, it appears that it was contemplated and intended by the parties that the nature and purposes of its subject-matter, and its various terms, were to be divisible and independent of each other, and that the parties intended that each provision therein stand as a contract between them, independent of the other terms or agreements.
>
> Elliott, in his work on Contracts, § 1543, and following, in a discussion of this subject, says in effect that, when the terms, nature, and purposes of a contract show that it is contemplated and intended by the parties that each and all of its parts, material provisions and the consideration, are common each to the other and interdependent, it is to be considered an entire contract. To be considered a divisible contract, it must appear that it is one from its nature and purposes susceptible of division and apportionment, and has two or more parts in respect to the matters and things embraced by it and not necessarily dependent upon each other, and that the parties did not intend that they shall be so dependent upon each

other. And then in following sections will be found illustrations of severable and entire contracts.

20 Ohio App. at 322.

Plaintiff points to the fact that the policy defines the coverage for personal property and the dwelling in different coverage categories:

| **POLICY COVERAGE**: | **LIMIT OF LIABILITY** |
| --- | --- |
| (Section I – Property): | |
| Coverage A – Dwelling (your home) | $320,000 |
| Coverage B – Other structures | $64,000 |
| Coverage C – Personal property | $160,000 |
| Coverage D – Loss of use | $96,000 |

(Doc. 2-1, at 8). Defendant responds that Plaintiff fails to identify any language in the contract suggesting that it was intended to create separate agreements, and that "[t]here is no language in Condition R [the concealment or fraud condition], or anywhere else in the Policy, that compartmentalizes inquiry to limit an intentional and material misrepresentation to a particular type of coverage provided by the Policy." (Doc. 14, at 14).

At the outset, although Plaintiff argues that "a jury may be inclined to find that defendant intended the coverages to be independent of each other because of the way they are listed out" (Doc. 18, at 9), the interpretation of a contract – including whether it is severable or divisible – is a question of law. *See Wal-Mart Realty Co. v. Tri-Cnty. Commons Assocs., LLC*, 2017-Ohio-9280, ¶ 13 (Ohio Ct. App.) ("The severability of a contract is a question of law and depends upon the intent of the parties."); *DePugh v. Mead Corp.*, 79 Ohio App. 3d 503, 512 (Ohio Ct. App. 1992) ("[T]he issue of whether an agreement is divisible is a question of law."). In interpreting a contract, the Ohio Supreme Court has explained courts should "seek primarily to give effect to the intent of the parties, and . . . presume that the intent of the parties is reflected in

the plain language of the contract." *Beverage Holdings, L.L.C. v. 5701 Lombardo, L.L.C.*, 159 Ohio St. 3d 194, 197 (Ohio 2019).

The Court agrees with Defendant that the plain language of the contract reveals it is intended to be one entire contract, rather than multiple severable or divisible agreements. As *Polk* explained, a contract is severable only if "was contemplated and intended by the parties that the nature and purposes of its subject-matter, and its various terms, were to be divisible and independent of each other, and that the parties intended that each provision therein stand as a contract between them, independent of the other terms or agreements." 20 Ohio App. at 322. And *DePugh* sets forth:

> "Divisibility is a general technique by which a court can mitigate the harshness of a rule that bars a party from enforcing an agreement by apportioning the performances into corresponding pairs of part performances and then enforcing the agreement as to only one part; additionally, the issue of whether an agreement is divisible is a question of law. *Spensley Feeds, Inc. v. Livingston Feed & Lumber, Inc.* (App.1985), 128 Wis.2d 279, 381 N.W.2d 601, 604.

> "Although there is no exact definition to determine when a contract is 'divisible' or 'entire,' a contract is generally not severable or divisible when its purpose, terms and nature contemplate that its parts and consideration shall be interdependent and common to each other. * * *. If the consideration to be paid is single and entire, the contract must be held to be entire, although the subject thereof may consist of several distinct and wholly independent items."

79 Ohio App. 3d at 512-13. Relying on *DePugh*, an Ohio appellate court held that the property coverage and liability coverage portions of an insurance policy were not divisible:

> The facts at issue herein do not manifest an intent by the parties to the insurance contract that the policy be severable. The policy did not require separate premiums for property insurance and liability insurance, but rather, required a single premium. Furthermore, the insurance policy allowed for cancellation of the entire policy and did not mention the property coverage and liability coverage separately.
>
> * * *
>
> Given that the entire policy could be canceled, in conjunction with the fact that there was a single premium paid for the policy, it is clear that the parties did not intend to create a severable insurance policy. *DePugh, supra.*

*Wells v. Westfield Ins. Co.*, 2001 WL 96126, at *6 (Ohio Ct. App.). Similarly here, there was a single premium payment for all coverage (*see* Doc. 2-1, at 7), the entire policy could be cancelled (*see* Doc. 2-1, at 71-72), and the "Conditions", including the "Concealment or Fraud" condition at issue here did not distinguish between the different types of coverage and expressly applied to all of "Section I" (*see* Doc. 2-1, at 56, 60).

Plaintiff further relies upon the Ohio appellate case of *Watkins v. Allstate Vehicle & Prop. Ins. Co.*, 2020 WL 3397803 (Ohio Ct. App.) to support her argument that the contract was severable. It is true that *Watkins* involved similar facts to those at issue here – an insurance company's denial of coverage for both personal property and a dwelling based on alleged material misrepresentations with respect to only the personal property. 2020 WL 3397803, at *9. But this is where the similarities end. First, *Watkins* did not make any determination regarding the severability of an insurance contract, the legal issue central to Plaintiff's argument. Rather – in evaluating a bad faith claim (not the breach of contract claim itself) – the court determined that the evidence presented "clearly demonstrated issues of fact regarding Allstate's claim of reasonable justification in denying Watkins' claim for dwelling coverage and personal property coverage." *Id.* at *15. Thus, it found the trial court erred in granting Allstate summary judgment on Plaintiff's bad faith claim because "genuine issues of material fact remain regarding reasonable justification to deny Watkins' claim for coverage[.]" *Id.* at *16.[10] Second, although the *Watkins* court emphasized that the insurance company relied only on misrepresentations with

_____

10. Contrary to Plaintiff's original representation in her brief, the Court did not hold that "by denying the claim in its entirety Allstate failed to perform its part of the contract" or that "[a]s a result of there being a demonstration of breach of contract, the court of appeals reversed the trial court's judgment of dismissing the contract claim." (Doc. 12, at 8). Rather, the court held that the trial court erred in granting summary judgment because there were disputed issues of fact. *Watkins*, 2020 WL 3397803, at *16.

respect to personal property and not the dwelling itself, it did so in the context of different policy language than that at issue here. Specifically, the policy in *Watkins* stated: "We may not provide coverage for any insured who had made fraudulent statements or engaged in fraudulent conduct in connection with an accident or loss for which coverage is sought under this policy." *Id.* at \*13. Applying this language, the Court explained:

> Thus, the Allstate policy permitted a denial of *coverage* if Watkins made fraudulent statements in connection with the accident or loss "*for which coverage is sought*[.]" Watkins purchased separate coverage for the dwelling, and Allstate never claimed that Watkins acted fraudulently in connection with the fire, considering Watkins, Amy Kynard, and Benito Canales were all in Las Vegas when the home burned. Allstate, furthermore, cited to no provision within the policy, collectively voiding separate types of coverage, based on the cited language.

*Id.* at \*13. By contrast, the language in the insurance policy before the Court is broader and applied to all of Section I of the policy:

> **R. Concealment or Fraud**
>
> > **1.** With respect to a loss caused by fire, we do not provide coverage to the "insured" who has:
> > > **a.** Intentionally concealed or misrepresented any material fact or circumstance;
> > > **b.** Engaged in fraudulent conduct; or
> > > **c.** Made false statements;
> > > relating to this insurance.

(Doc. 2-1, at 60). That is, it states that Defendant does not "provide coverage" if there has been a misrepresentation of material fact "relating to this insurance". *Id.* This language differs materially from that at issue in *Watkins*.

At core, *Watkins* found, under the terms of the policy at issue and facts presented, that issues of material fact prevented summary judgment on a bad faith claim. It does not support the weight Plaintiff attempts to place on it, and it does not demonstrate Plaintiff's entitlement to summary judgment. As such, the Court rejects Plaintiff's argument that the policy provisions are

13

severable and denies her motion for partial summary judgment as to the coverage of the dwelling on that basis.

*Material Misrepresentations*

Defendant contends it is entitled to summary judgment on Plaintiff's breach of contract claim because the evidence demonstrates Plaintiff intentionally made material misrepresentations during the investigative process after the fire regarding the age and value of her personal property. Plaintiff responds that Defendant has not presented evidence that her statements were intended to mislead. *See* Doc. 23, at 9 ("Plaintiff hence asserts that Spinnaker is not entitled to judgment as a matter of law against any claims of plaintiff's material misrepresentation because evidence has not been presented to show that she willfully deceived defendant[.]").

"Concealment or fraud clauses are fully enforceable under Ohio law." *Taylor v. State Farm Fire & Cas. Co.*, 2012 WL 1643877, at *3 (N.D. Ohio) (citing *Smith v. Allstate Indem. Co.*, 304 F. App'x 430, 431–32 (6th Cir. 2008)); *see also Rainer v. Century Sur. Ins. Co.*, 1990 WL 85207, at *5 (Ohio Ct. App.) (citing *Hartford Fire Ins. Co. v. Cincinnati Ice Mfg. & Cold Storage Co.*, 9 Ohio App. 403, at *3 (Ohio Ct. App. 1918); *Lakes v. Buckeye State Mut. Ins. Ass'n*, 110 Ohio App. 115 (1959)).

"For [an insurance company] to prevail on its motion for summary judgment, the Court must conclude that there are no genuine issues of material fact as to: (1) the willful nature of [Plaintiff's] statements and (2) the materiality of [Plaintiff's] alleged misrepresentations." *Brewer v. State Farm Fire & Cas. Co.*, 2014 U.S. Dist. LEXIS 195065, *7 (S.D. Ohio) (citing *Parker v. State Farm Fire & Cas. Co.*, 1988 WL 1058394, at *14 (N.D. Ohio)). Thus, "[a]s to the intent requirement, [the insurance company] cannot rely solely on the fact that some of [the plaintiff's] statements may have been false; rather, [the plaintiff's] misrepresentations must have

14

been made willfully, in a manner 'calculated either to discourage, mislead or deflect the insurer's investigation.'" *Id.* (citing *Joseph v. State Farm Fire & Cas. Co.*, 2013 WL 663623, at *9 (S.D. Ohio)); *see also Rose v. State Farm Fire & Cas. Co.*, 766 F.3d 532, 536 (6th Cir. 2014) ("In order for [the insurance company] to validly invoke the concealment provision voiding the insurance contract, the insured must have *intentionally* concealed or misrepresented a material fact; false statements alone are not enough.") (emphasis in original).

To deny coverage, a misrepresentation must also be "material." "[A] misrepresentation will be considered material if a reasonable insurance company, in determining its course of action, would attach importance to the fact misrepresented." *Latimore v. State Farm Fire & Cas. Co.*, 2012 WL 3061263, at *4 (N.D. Ohio) (quoting *Abon, Ltd. v. Transcon. Ins. Co.*, 2005 WL 1414486, at *13 (Ohio Ct. App.) (further quotations and citations omitted)). The subject of the misrepresentation "need not ultimately prove to be significant to the disposition of the claim, so long as it was reasonably relevant to the insurer's investigation at the time." *Abon*, 2005 WL 1414486, at *13. Moreover, "[t]he materiality of a misrepresentation is a mixed question of law and fact that under most circumstances should be determined by the trier of fact." *Id.* Finally, "a defense based on an exception or exclusion in an insurance policy is an affirmative one, and the burden is cast on the insurer to establish it." *Continental Ins. Co. v. Louis Marx Co., Inc.*, 64 Ohio St. 2d 399, 401 (1980) (citation omitted).

Again, the condition at issue here states: "With respect to a loss caused by fire, we do not provide coverage to the "insured" who has . . . [i]ntentionally concealed or misrepresented any material fact or circumstance . . . relating to this insurance." (Doc. 2-1, at 60).

Defendant emphasizes purported differences between Plaintiff's sworn proof of loss inventory and her EUO testimony regarding the age and value of certain property, as noted

above. It further argues that Plaintiff was expressly warned by Associated Adjusters of the need to provide accurate age information regarding her property. Plaintiff responds that Defendant has failed to point to evidence establishing she intentionally tried to mislead Defendant and that this creates a genuine issue of material fact. Although Defendant's evidence demonstrates discrepancies between Plaintiff's representations and her sworn statement of loss inventory, the Court finds issues of material fact regarding Plaintiff's intent, as well as the materiality of these alleged misrepresentations remain. As such, the Court denies Defendant's motion for summary judgment on this basis.

*Arson / Intentional Loss*

Defendant further contends it is also (and alternatively) entitled to summary judgment because it "presents compelling (and uncontradicted) evidence that Plaintiff, directly or indirectly, set fire to her residence intentionally". (Doc. 21, at 1). Plaintiff responds that Defendant has presented nothing more than speculation and that "there is no evidence to demonstrate that [P]laintiff was responsible for the fire which destroyed her home." (Doc. 23, at 10). For the reasons stated below, the Court finds there are issues of material fact regarding the arson defense, and as such summary judgment is not appropriate.

"[A]rson is an affirmative defense to be established by proof by a preponderance of the evidence[.]" *Caserta v. Allstate Ins. Co.*, 14 Ohio App. 3d 167, 171 (Ohio Ct. App. 1983) "In proving an arson defense, there are three basic elements: (1) fire of an incendiary origin; (2) motive on the part of the insured; and (3) opportunity of the insured to cause the fire." *Abon, Ltd. v. Transcon. Ins. Co*., 2005 WL 1414486, at *5 (Ohio Ct. App.) (citing *Caserta*, 14 Ohio App. 3d at 168; *Hazelwood v. Grange Mut. Ins. Co.*, 2005–Ohio–1090 at ¶ 5 (Ohio Ct. App.)). "Courts have long recognized that arson can be established in civil cases by circumstantial evidence." *Id*

(citing *Arms v. State Farm Fire & Cas. Co.*, 731 F.2d 1245 (6th Cir. 1985); *Forrestwood Devel. Corp. v. All–Star Ins. Corp.* 1978 WL 208443 (Ohio Ct. App.)).

Here, there is no dispute about the first element.[11] That leaves the motive and opportunity elements.

Defendant argues it has presented evidence of a financial motive. The Court agrees. Specifically, Defendant cites Plaintiff's prior bankruptcies, low yearly income, property tax arrears, overdue child support from Richardson, failure to insure the premises before March 2021, insuring of the property at a value of $320,000 when she had purchased it roughly five years earlier for $2,300, and unsuccessful attempt to sell the property all demonstrate Plaintiff's financial condition. Plaintiff argues "these alleged situations are not yet enough to argue that plaintiff burned her own house down for an insurance claim". (Doc. 18, at 4-5). But as noted above, an arson defense can be established by circumstantial evidence and courts have found a financial motive sufficient to establish the "motive" element of an arson defense. *See, e.g.*, *Caserta*, 14 Ohio App. 3d at 169 ("Defendant presented evidence of motive: that plaintiff might have caused the fire to be set in order to obtain the insurance proceeds."); *Rose v. State Farm Fire & Cas. Co.*, 766 F.3d 532, 536 (6th Cir. 2014) ("Rose's financial situation is undoubtedly a material issue here because it provides a potential motive for him to commit arson and collect on his loss."); *Randle v. Allstate Indem. Co.*, 649 F. Supp. 2d 675, 679 (N.D. Ohio 2009); *Hague v. Allstate Prop. & Cas. Ins. Co.*, 2014 WL 5465841, at *6 (N.D. Ohio) ("Inquiries into whether

---

11. In her opposition brief, Plaintiff argues that "[t]here still remains the issue of fact regarding how the flammable liquid got onto the premises." (Doc. 23, at 11). While it is true that there is no evidence establishing this, the Court finds this is not an issue of *material* fact at the summary judgment stage. A fact is material if it might affect the outcome under governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see also* Wright & Miller, 10A FED. PRAC. & PROC. CIV. § 2725.1 (2016) ("A fact is material if it tends to resolve any of the issues that have been properly raised by the parties.").

Plaintiff was in a stable financial posture, while largely circumstantial and speculative, are material to the issue of motive.").

Defendant also asserts it has provided sufficient evidence of Plaintiff's opportunity to cause the fire. Again, the Court agrees. Plaintiff testified that she was the only person with a key to the property (Plaintiff Depo., at 19); she further testified that she had an alarm and it did not go off the night of the fire (Plaintiff EUO, at 129); *cf. Thomas v. Allstate Ins. Co.*, 974 F.2d 706, 711 (6th Cir. 1992) ("With regard to opportunity, the defendant found that there was no evidence of forced entry when the house was burned."); *Helwig v. Allstate Ins. Co.*, 2015 WL 10990266, at *3 (S.D. Ohio) (citing, as relevant to the opportunity element, that "the evidence indicated that the fire began from inside the home, the home was locked and secured prior to the fire, and only he, his girlfriend, and certain of his family members possessed the keys"); *Hague*, 2014 5465841, at *7 (finding where plaintiff had the only set of keys and there were no signs of forced entry, the opportunity element was met). Plaintiff was also in the Toledo area at the time of the fire, and she told differing stories about when she returned and where she was staying the night of the fire. *See* Plaintiff EUO, at 93-94; Plaintiff EUO, at 18; Doc. 14-1, at 12. This is circumstantial evidence on the opportunity element.

Plaintiff does not dispute the accuracy of the evidence Defendant cites, but argues it is speculative and insufficient. And she unequivocally avers that that she "was not, in any way, involved in the alleged arson" and that she has "no idea what caused the fire, and . . . was not aware that the fire was going to occur on June 6, 2021." (Plaintiff Aff., Doc. 12-1, at ¶¶ 6-7). She points to a news article describing six arson fires in Toledo in 2023, contemplating that there could have been similar arson crimes in 2021. (Doc. 18, at 5). And she argues that the fire has

18

caused her emotional distress, financial costs, and other negative effects, which she "would never intentionally infl[i]ct upon herself." (Doc. 23, at 10).

Taking all of the above in the light most favorable to Plaintiff, the Court finds there is a question of material fact regarding Defendant's arson defense, and summary judgment is not appropriate on this basis.

Bad Faith

Defendant additionally argues it is entitled to summary judgment on Plaintiff's bad faith claim for two independent reasons: (1) because it properly denied the claim based on Plaintiff's material misrepresentations, there can be no bad faith; and (2) Defendant has identified an issue of fact regarding its arson defense, and as such, has provided a "reasonable justification" precluding a finding of bad faith. The Court finds Defendant is entitled to summary judgment on Plaintiff's bad faith claim.

In Ohio, "an insurer has a duty to act in good faith in the processing and payment of the claims of its insured." *Staff Builders, Inc. v. Armstrong*, 37 Ohio St. 3d 298, 302 (1988). "[A]n insurer fails to act in good faith in the processing of a claim of its insured where its refusal to pay the claim is not predicated upon circumstances that furnish reasonable justification therefor." *Zoppo v. Homestead Ins. Co.*, 71 Ohio St. 3d 552, 554 (1994).[12] Denial of a claim is not

---

12. There are two types of bad faith claims in this context:

> (1) when an insurer breaches its duty of good faith by intentionally refusing to pay an insured's claim where there is no lawful basis for the refusal coupled with actual knowledge of that fact; and (2) when an insurer breaches its duty of good faith by intentionally refusing to pay an insured's claim where the insurer intentionally failed to determine whether there was any lawful basis for such refusal.

*Ballard v. Nationwide Ins. Co.*, 46 N.E.3d 170, 173 (Ohio Ct. App. 2015). Here, the language of the Complaint demonstrates Plaintiff brings a claim of the second type. *See* Doc. 1, at ¶ 19

reasonably justified when it is done arbitrarily and capriciously. *See Hoskins v. Aetna Life Ins. Co.*, 6 Ohio St. 3d 272, 277 (1983); *Thomas v. Allstate Ins. Co.*, 974 F.2d 706, 711 (6th Cir. 1992). However, denial of a claim may be reasonably justified when "the claim was fairly debatable and the refusal was premised on either the status of the law at the time of the denial or the facts that gave rise to the claim." *Tokles & Son v. Midwestern Indemn. Co.*, 65 Ohio St. 3d 621, 630 (1992); *Maxey v. State Farm Fire & Cas. Co.*, 689 F. Supp. 2d 946, 953 (S.D. Ohio 2010). "The test, therefore, is not whether the defendant's conclusion to deny benefits was correct, but whether the decision to deny benefits was arbitrary or capricious, and there existed a reasonable justification for the denial." *Thomas*, 974 F.2d at 711. "Stripped to the bare essentials, the central factual issue in the bad faith claim is whether or not [the insurer] had a reasonable basis to deny [the insured's] claim." *Abon, Ltd.*, 2005 WL 1414486, at *6.

"On a motion for summary judgment, Ohio law directs courts to assess bad-faith-denial-of-coverage claims from the perspective of what information motivated the insurer's denial." *Smith v. Allstate Indem. Co.*, 304 F. App'x 430, 432 (6th Cir. 2008); *Cook v. Erie Ins. Co.*, 2020 WL 13453595, at *4 (S.D. Ohio) ("The key inquiry is whether the insurance company's reasoning for its decision to deny or delay benefits was reasonably justified."). "To grant a motion for summary judgment brought by an insurer on the issue of whether [an insurer] lacked good faith in the satisfaction of an insured's claim, a court must find after viewing the evidence in a light most favorable to the insured, that the claim was fairly debatable and the refusal was premised on either the status of the law at the time of the denial or the facts that gave rise to the claim." *Abon, Ltd.*, 2005 WL 1414486, at *5. By contrast, "[t]o withstand a motion for summary

---

("Defendant has failed to exercise good faith because the circumstances that Defendant argues did not furnish reasonable justification for its refusal to pay Plaintiff's claims for losses.").

judgment in a bad faith claim, an insured must oppose such a motion with evidence which tends to show that the insurer had no reasonable justification for refusing the claim, and the insurer either had actual knowledge of that fact or intentionally failed to determine whether there was any reasonable justification for refusing the claim." *Id.*

As to Defendant's first argument, as discussed *supra*, the Court finds issues of material fact precludes summary judgment on the breach of contract claim. But this same analysis means Defendant is entitled to summary judgment on the bad faith claim because it demonstrates the claim was "fairly debatable and the refusal was premised on . . . the facts that gave rise to the claim." *Tokles*, 65 Ohio St. 3d at 630. And in response, Plaintiff has not offered "evidence which tends to show that the insurer had no reasonable justification for refusing the claim, and the insurer either had actual knowledge of that fact or intentionally failed to determine whether there was any reasonable justification for refusing the claim." *Abon, Ltd.*, 2005 WL 1414486, at *5. On the record before the Court, nothing suggests that Defendant's decision to deny benefits was "arbitrary and capricious" regardless of whether it is ultimately found to be correct. *Thomas*, 974 F.2d at 711. Defendant is therefore entitled to summary judgment on Count Two.

Alternatively and additionally, the Court addresses Defendant's second argument that it is entitled to summary judgment on the bad faith claim based on its arson defense.[13]

---

13. Plaintiff responds to this argument on the merits and does not argue that Defendant's denial letter did not cite arson as the original basis for denial. The denial letter only explicitly references the concealment or fraud provision of the policy and Plaintiff's alleged misrepresentations regarding her property. *See* Doc. 17-1, at 378. However, the Court also observes that Defendant certainly reserved the right to assert additional policy defenses. *See id.* at 379 ("denial is not exclusive of any other policy provisions, exclusions, and/or defenses which may be available to Hippo with regard to this claim, and Hippo expressly reserves the right to enforce and/or assert any and all policy provisions, exclusions and defenses"). As such, the Court addresses this argument in the alternative.

Defendant correctly points out that courts have held "evidence that creates an issue of fact on an arson defense is sufficient, so long as it is not fraudulent, to create the reasonable justification to defeat a bad faith claim." *Abon, Ltd.*, 2005 WL 1414486, at *7; *see also Smith*, 304 F. App'x at 432 (insurer "d[oes] not have to conclusively establish arson; it c[an] deny coverage in good faith so long as the claim was 'fairly debatable.'"). Plaintiff expressly argues that there is "an issue of fact regarding the three elements necessary to prove intentional arson." (Doc. 23, at 12). And, as set forth above, the Court agrees that there are issues of fact regarding Defendant's arson defense. As such, even taking the evidence in the light most favorable to Plaintiff, the Court finds a reasonable jury could only conclude Defendant had a "reasonable justification" for denying Plaintiff's claim, that is, that the denial was at least "fairly debatable" and not "arbitrary or capricious." *Abon, Ltd.*, 2005 WL 1414486, at *7. For this additional and alternative reason, Defendant is entitled to summary judgment on Count Two, Plaintiff's bad faith claim.

CONCLUSION

For the foregoing reasons, good cause appearing, it is

ORDERED that Plaintiff's Motion for Partial Summary Judgment (Doc. 12) be, and the same hereby is, DENIED, and it is

FURTHER ORDERED that Defendant's Motion for Summary Judgment (Doc. 21) be and the same hereby is, GRANTED IN PART and DENIED IN PART as set forth herein.


 s/ *James R. Knepp II*
UNITED STATES DISTRICT JUDGE

22
